IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK MILETAK, | No. C 13-4865 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| COMMUNICATION WORKERS OF AMERICA (CWA) | |
| Defendant. | |

Defendant's motion to dismiss the complaint and plaintiff's motion for sanctions are scheduled for a hearing on April 25, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss with leave to amend and DENIES plaintiff's motion for sanctions. If plaintiff wishes to amend his complaint, he must do so by **May 2, 2014**.

**BACKGROUND**

On October 18, 2013, plaintiff Nick Miletak filed a *pro se* complaint against his former union, Communication Workers of America, Local 9423 ("CWA"), and Joe Beirne.[1] The complaint alleges that CWA breached its duty of fair representation and breached a collective bargaining agreement by withdrawing two grievances that CWA filed on behalf of plaintiff against his former employer, AT&T.

---

[1] The parties subsequently stipulated to the dismissal of Beirne. Docket No. 30.

The complaint also alleges that CWA inflicted emotional distress on plaintiff by withdrawing the grievances.

The complaint alleges that plaintiff was an AT&T employee and a CWA union member and shop steward. Compl. ¶ 7. CWA negotiated a collective bargaining agreement ("CBA") that guaranteed plaintiff's wages, hours, and working conditions. *Id.* ¶¶ 7-8. In September 2010, plaintiff filed a complaint with California OSHA ("Cal/OSHA") alleging unsafe working conditions and worker fatigue caused by mandatory overtime. *Id.* ¶ 9. The complaint alleges that starting in May 2011, AT&T retaliated against plaintiff for filing the Cal/OSHA complaint by repeatedly denying him promotions. *Id.* ¶ 10. The complaint also alleges that in February 2012, plaintiff received a hardship transfer whereby he was relocated to a work location closer to his house and at a higher wage. *Id.* ¶ 12. However, after four months, the hardship transfer was denied and plaintiff was returned to his old position. *Id.*

Sometime in May or June of 2012, plaintiff filed two grievances with CWA alleging that AT&T retaliated against plaintiff by denying his hardship transfer and denying him a promotion to manager. *Id.* ¶ 11 & Ex. 2-4. In a status report dated August 12, 2012, CWA notified plaintiff that the hardship transfer grievance was denied and subsequently withdrawn because "[t]he hardship transfer process is not part of our CBA and as such we have no jurisdiction over the process" and "[t]he remedy sought would have been in violation of the contract." *Id.* Ex. 2. In a second status report dated Augsut 27, 2013, CWA informed plaintiff that the hardship transfer was denied because "it does not meet the criteria of critical medical need." *Id.* Ex. 3. In a third status report dated October 12, 2012, CWA informed plaintiff that it was withdrawing the grievance alleging retaliatory failure to promote based on lack of proof. *Id.* Ex. 4. The complaint alleges that CWA withdrew the grievances without meeting its minimum duty to investigate his grievances. *Id.* ¶ 17.

The complaint alleges that CWA's failure to pursue the grievances against AT&T "[c]aused plaintiff to seek outside recourse" against AT&T by filing a lawsuit against AT&T. *See Miletak v. AT&T*, C 12-5326 EMC (N.D. Cal.). *Id.* ¶ 13. On April 8, 2013, plaintiff signed a settlement agreement with AT&T conditioned on his resignation. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. If the court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations marks omitted).

## DISCUSSION

**I.   Defendant's motion to dismiss**

    **A.   Failure to Represent and Breach of Collective Bargaining Agreement**

Plaintiff alleges that CWA breached its duty of fair representation and breached the CBA when it failed to do a minimal investigation of witnesses before withdrawing his grievances. Compl. ¶¶ 17,

3

20.[2] Defendant contends that these claims are time barred because this lawsuit was filed after the expiration of the six month statute of limitations governing such claims.

The duty of fair representation is the union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Allegations of a breach of the duty of fair representation arise under Section 301 of the Labor Management Relations Act ("LMRA") and are governed by a six month statute of limitations. 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983); *Allen v. United Food & Commercial Workers Int'l Union, AFL-CIO, CLC,* 43 F.3d 424, 426 (9th Cir. 1994). "[T]he cause of action generally accrues when the employee learns or should have learned of the union's decision." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986) (citations omitted). For example, "[t]he limitations period begins to run when a Plaintiff receives a letter from the Union notifying [him] that it will pursue [his] claim no further." *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998) (citing *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1049 (9th Cir. 1987)).

Defendant contends that plaintiff's claims for breach of the duty of fair representation and breach of contract are barred by the statute of limitations because the complaint and documents attached to the complaint show that CWA informed plaintiff on August 12, 2012 and August 27, 2012 that it was withdrawing the hardship transfer grievance, and informed plaintiff on October 12, 2012 that it was withdrawing the failure to promote grievance, and this lawsuit was filed over a year later. Plaintiff's

---

[2] Plaintiff's breach of contract claim alleges that "[d]efendant's act of withdrawing Plaintiff's grievances was done in contradiction to the duties of a Union as set forth in [case law discussing the breach of the duty of fair representation]." Compl. ¶ 20. Cases involving claims for a breach of the duty of fair representation against a union are often "hybrid" lawsuits in which a plaintiff sues the union for breach of the duty of fair representation, and sues the employer for breach of contract. *See, e.g.*, *Harper v. San Diego Transit Corp.*, 764 F.2d 663 (9th Cir. 1985). "Federal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers. . . . [I]ndependent federal jurisdiction exists over fair representation claims because the duty is implied from the grant of exclusive representation status, and the claims therefore 'arise under' the NLRA [National Labor Relations Act]." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83 (1989). Claims for breach of a collective bargaining agreement also arise under Section 301 of the LMRA, and are also governed by a six month statute of limitations. *See Harper*, 764 F.2d at 667, 669.

4

opposition does not address the hardship transfer grievance, and the Court finds that to the extent plaintiff's claims challenge the withdrawal of this grievance, those claims are untimely.

With regard to the withdrawal of the failure to promote grievance, plaintiff argues that this claim is not untimely because he continued to apply for jobs throughout his employment, and each denial constitutes a continuing violation that tolls the statute of limitations. However, the continuing violation doctrine does not apply to allegations that a union breached the duty of representation. *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir. 1985) ("Harper claims, however, that the Union continually breached its duty of fair representation by continuing to fail to pursue his grievance. This continuing breach theory finds no support in the case law, and it contradicts one of the premises of the hybrid § 301 lawsuit."). Plaintiff also argues that this claim is timely because it accrued on April 25, 2013, which according to plaintiff is the last day he could have revoked the settlement agreement with AT&T, and thus is the date that he should reasonably have known that the union had breached its duties to plaintiff. Plaintiff does not cite any authority for this position, and this argument is foreclosed by the case law cited *supra* holding that "[t]he limitations period begins to run when a Plaintiff receives a letter from the Union notifying [him] that it will pursue [his] claim no further." *Grant*, 163 F.3d at 1138.

Accordingly, plaintiff's claims for breach of the duty of fair representation and breach of contract based on the grievances withdrawn on August 12, 2012, August 27, 2012, and October 12, 2012 are DISMISSED without leave to amend.

Plaintiff also argues that "[i]t is Plaintiff's contention that each subsequent instance of failure to promote created a new opportunity to file a new grievance for retaliation or to re-file the original grievance for retaliation with new evidence." Opp'n at 5:5-7. However, plaintiff does not allege that he actually filed additional grievances with regard to any other acts of retaliatory failure to promote. Plaintiff's opposition also states that his "attempts in April 2013 at re-filing the original retaliation grievance and/or filing a new grievance were all denied." *Id*. at 5:20-22. To the extent plaintiff contends that refiling the original grievance with new evidence would revive the statute of limitations, plaintiff is incorrect. *See Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916 (7th Cir. 1999) ("Contrary to Christiansen's suggestion, subsequent union action on the same grievance does not restart the limitations clock."). To the extent that plaintiff claims that he attempted to file a new grievance in

5

April 2013 and that the union breached its duty to represent him with regard to that grievance, those allegations are not contained in the complaint. The Court will GRANT plaintiff leave to amend the complaint if plaintiff can allege that he actually filed or attempted to file grievances that are distinct from the grievances alleged in the complaint, and that those grievances were filed within the six month statute of limitations.

### B.     Emotional distress claims

Plaintiff alleges that CWA caused him emotional distress by withdrawing his grievances. Compl. ¶¶ 24, 27, 30. CWA argues that federal labor law preempts these state tort claims because the Court would be required to interpret the CBA in order to determine liability.

"LMRA § 301 preempts state-law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]'" *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)); *see also Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1149-50 (9th Cir. 1988) (holding plaintiff's emotional distress claim preempted by § 301 where "[a] determination of the validity of her emotional distress claim will require us to decide whether her discharge was justified under the terms of the collective bargaining agreement. Her claim therefore cannot be decided without interpreting or analyzing the terms of the agreement."). The Ninth Circuit has held that Section 301 preempts emotional distress claims based on a union's failure to represent because a "court would necessarily refer to the Union's duties to [plaintiff] as stated in the CBA." *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1089 (9th Cir. 1991). In *Perugini*, a union member brought an emotional distress claim against her union for failure to represent her adequately with regard to a request for light duty work. The court held that such a claim was preempted:

> In reviewing whether the Union was obligated to represent Perugini and to pursue her claims, the court would necessarily refer to the Union's duties to Perugini as stated in the CBA. To the extent that Perugini's claims are based on the Union's failure to represent her, section 301 preempts her claims. Whether the Union's conduct in this regard was outrageous depends upon whether that conduct was appropriate under the circumstances. "Because the tort requires inquiry into the appropriateness of the defendant's behavior, the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable." *Miller*, 850 F.2d at 550. The Union's failure to seek light duty for Perugini is not outrageous

6

> if the Union has no duty under the CBA to represent her in this matter. Consequently, regardless of whether the CBA actually obligates the Union to represent Perugini in her attempt to be assigned light duty, the appropriateness of the Union's conduct can be determined only by interpreting the CBA. Thus, the district court properly found that the intentional infliction of emotional distress claim against the Union is preempted by section 301 to the extent that the claim is based on the Union's failure to represent Perugini.

*Id*. at 1089.

Here, plaintiff alleges he experienced emotional distress as "a direct result" of the "intentional withdrawal of [his] grievances." Compl. ¶¶ 21, 24, 27. The complaint does not allege that CWA engaged in outrageous conduct unrelated to the decision to withdraw the grievances. As in *Perugini*, the Court would be required to interpret the CBA to determine if CWA's conduct regarding the withdrawal of grievances was outrageous, and thus the emotional distress claims are preempted.

Plaintiff argues that his emotional distress claims are not preempted because the CBA does not cover actions involving retaliation, fraud, and deceit. As support, plaintiff relies on *Tellez v. Pacific Gas and Elec. Co.*, 817 F.2d 536 (9th Cir. 1987), in which the plaintiff alleged that his employer "defamed him by distributing copies of a letter maliciously and falsely accusing him of buying cocaine on the job." *Id*. at 538. The Ninth Circuit held that the plaintiff's emotional distress claim was not preempted because "[i]n reviewing whether there was just cause to suspend Tellez, the grievance committee would have no authority to decide whether PG & E had acted outrageously in sending the letter. Moreover, it could provide no remedy for such behavior. . . . the present agreement is silent on work conditions, and vague on disciplinary formalities. It neither requires nor regulates suspension letters." *Id*. at 539. *Tellez* is inapposite because here, plaintiff does not allege that CWA retaliated against him or that CWA engaged in fraud or deceit. The crux of his claim is that CWA withdrew his grievance in a manner that breached its duty to fairly represent plaintiff, a duty that exists only because of the CBA.

Accordingly, plaintiff's claims for infliction of emotional distress based on a breach of the duty of fair representation are DISMISSED. The Court GRANTS plaintiff leave to amend the emotional distress claims only if the alleged conduct does not require interpretation of the CBA.

///

7

**II.     Plaintiff's motion for sanctions**

Plaintiff seeks sanctions against defendant based on defendant's failure to file a Consent to Proceed Before a Magistrate Judge and for renoticing the motion to dismiss for a date on which plaintiff states that defendant knew plaintiff had a conflict. Defendant opposes the motion on numerous grounds. The Court has reviewed the parties' papers and finds no factual or legal basis to sanction defendant. Accordingly, plaintiff's motion for sanctions is DENIED.

**CONCLUSION**

For the foregoing reasons the Court GRANTS defendant's motion to dismiss the complaint and GRANTS plaintiff leave to amend in accordance with this order. If plaintiff wishes to amend the complaint he must do so by **May 2, 2014**. The Court DENIES plaintiff's motion for sanctions. This order resolves Docket Nos. 33 and 43.

**IT IS SO ORDERED.**

Dated: April 22, 2014

SUSAN ILLSTON  
UNITED STATES DISTRICT JUDGE